begin by calling the first case. If both attorneys would step up that are going to present oral argument and please identify yourself for the record. I am Kathleen Weck representing the appellant, Angel Ford-Wright. My name is Bill Toffinetti. I am an assistant state attorney for Cook County. All right. Each side will have approximately 15 minutes to present oral argument. And from that, Mr. Toffinetti, you may save, I'm sorry, counsel for the appellant, you may save out some time for rebuttal. Ms. Weck. Thank you. Good morning, I'm Kathleen Weck representing the appellant, Angel Ford-Wright. Angel Ford-Wright was convicted of four murders. Three of them were tried together in a jury trial and one in a separate bench trial. And although I'm happy to answer questions on any of the issues that I've raised on appeal, I would like to specifically focus on the issue that is common to all four of these cases. And that, of course, is the issue of whether there was probable cause to arrest Angel Ford-Wright. The police arrested Angel Ford-Wright for the homicide of Aisha Epps at 3 a.m. on July 2nd, 2004 when she approached the squad car that was parked outside her house. And I have three main points why the police lacked probable cause to arrest Angel at that point. First, it was an unreliable witness, her cousin Caroline Peoples, who was implicating Angel. Second, the police failed to corroborate most of the information that Caroline gave to them. And third, even if that information that Caroline provided is deemed reliable, it still is not enough for probable cause to arrest her because Caroline said she only suspected that Angel was involved in Aisha Epps' death. And at that point, Ms. Weck, had she explained what her suspicion was based on? Caroline? Yes. Yes, Caroline's suspicion was based on the fact that she said, told the police after she had lied repeatedly, that Angel and Angel's boyfriend, Anthony, had dropped Caroline off at her house and that was the last she saw, again, of Aisha Epps after that point. And there was, you know, also then later she's, you know, once she's lied and the police are investigating her further, then she gives further information to try to shift the blame off of herself and cast it in the direction of Angel and Angel's boyfriend, Anthony. But the main point is an informant's tip is usually deemed more reliable if they also try to implicate themselves in some manner. But of course, we have nothing like this here. We have a lying witness, unreliable from that standpoint, who also is trying to shift the blame away from herself, even though, curiously, it is only Caroline and not Angel that has any connection, as far as anybody knows, to Aisha Epps. It was, Aisha Epps was at a party the night before her disappearance at Antoinette Bell's house and Antoinette Bell apparently told this other woman, Latonya Harris, that Aisha left after midnight, she got picked up to go to Caroline's house, who everyone knew as Cal. Also, another person knew that Aisha had been getting phone calls from Cal, Caroline Peoples and Aisha. Nobody before the police go to arrest Angel Ford Wright, other than Caroline, has made any connection whatsoever between Angel Ford Wright and Aisha Epps. One of the things the state suggests in order to argue that there was probable cause is the suggestion that somehow if someone is, if they're last seen with someone, that can be one of the factors. But how would you respond to that? Well, there are some cases that talk about that being a suspicious fact, for example. I think one of the cases we cited in the brief that specifically I think is a good comparison is this case called Peoples v. Hardaway, which was a First District decision. In that case, the defendant was the last person to be seen with the deceased about 45 minutes before her body is found. The person that says that the defendant was seen with the deceased 45 minutes, a very short time period before her death, was another witness's mother, who was deemed apparently a reliable witness. But that's not the only thing the police knew in that Hardaway case when they went to arrest him. They also knew that he had a criminal background, he was a gang member, and they knew he had lied to the police. So they have the defendant lying, they have him with a criminal background, unlike this case in which Angel Ford Wright has no criminal background, and a very short time period of 45 minutes before the deceased's body is found. Whereas in this case, we have at least four or five hours after Ayesha Epps is seen until she's found her body dead in this alley. So it's not really comparable to these cases in which there's a very short time frame or a very limited area in which the deceased is found. So I think it's quite distinguishable from other cases in which- It's something to look into. Normally if someone is last seen with someone before they're killed. I mean it would be something that the police would certainly investigate. Yes, I think it would be something to investigate. But whether it amounts to probable cause is a different issue. True. Absolutely. Standing alone- Standing alone, no. I would certainly argue that that would not be enough for the police to go out and arrest someone because they were last seen with the victim. Whether it was five minutes before or 20 minutes before or an hour before. Maybe if it was that close in time, I don't know. But again, another point, my point number two is that this information Caroline, the unreliable witness, gives is really most of it is not corroborated. Isn't there some corroboration by the fact that another witness saw Ms. Epps climbing into this yellow dented car that was also described by Ms. Peoples at the relevant time? That probably is one of the main corroborating facts if we want to say this is the exact same car. Of course, Parnell Goldmeier, the person who says that he sees Ayesha Epps get into this dented four-door car containing four men, by the way, which doesn't seem to comport with the fact that Angel or any other woman was in the car. But disregarding that, there does seem to be some similarity between the car that is parked outside Angel's house that Caroline tells the police belongs to Caroline's boyfriend and Caroline describes, and this car that Parnell Goldmeier says. But again, they don't actually get Parnell Goldmeier to identify this car. There's no corroboration. And we still don't even know that Angel was even in that car because Parnell sees four men. Other point, Ms. Weck. Had she said, Cal, had she said at that point that she was suspicious that Angel Ford Wright and Anthony, yes, were, that she was suspicious of them having committed it because there had been suggestions about the other murder? This is the only point that possibly is another point of worth corroborating or investigating. But again, they don't really corroborate this. This is, again, Caroline's suspicion, trying to cast it in Angel's direction, saying that she heard from Angel that Anthony, Angel's boyfriend, had killed this Mexican man on Phillips Street. Did they, but did the police at that point verify that there was a murder of a Hispanic on Phillips Street? They had, before they went to arrest Angel, they had corroborated a Mexican man with the name Jose Marquez, who very oddly lived on the block directly behind Caroline, almost like behind her alley. So again, this is like something that she well could have known. It wasn't like hop of a cause. And again, Caroline had not said that Angel was involved with this death. She just said that Angel said Anthony was. So again, this is just a suspicious fact. But she received some proceeds from the robbery of this Anthony, right? She said, I got something, some kind of proceeds from this. That did seem to be really connected up. Caroline also said that Angel, on another occasion, showed up in a white SUV. Caroline didn't actually say that was connected to whatever this murder of the Mexican person was. She said, Angel showed up in this car and said, we hit a lick and jacked that in, which I don't even know what this is supposed to mean exactly. It's just some kind of inference that some kind of crime had been done by Angel. Again, not corroborated before the police go to arrest Angel. All of this is just like information that this unreliable witness is spewing out to try to get the blame away from herself. So the police ultimately tracked down that car, didn't they? It was sold through an intermediary to a third party, isn't that right? Right. I think that was Kenneth Reddick, one of the people that they were convicted of killing. That was his SUV. I didn't even have any connection to this Mexican man, Jose Marquez, is my pretty firm recollection from the record on this. But that was subsequent to the arrest? That was subsequent to the arrest. Did they have corroboration? No, that was not corroborated at the time they go to arrest. Right. And there's a couple other points that point away from the probable cause to arrest direction two. And one is, they actually go to outside Angel's house, the police, at 1 AM with Caroline Peoples. And at that point, she points out, this is where Angel lives. And the car, this car that vaguely resembles the one that Parnell Gohmeyer talked about, is parked outside. But the police do not go at that point to arrest Angel Ford Wright. Instead, they go back to the police station with Caroline and return an hour later. And at that point, the car is gone. So it's almost like the police are recognizing they really are lacking probable cause. Because otherwise, if they think there's a criminal there, why don't they go up to the door to talk to her right then? They don't. Well, what happens in the interim? They just take Caroline back to the station. They drop her off, and then they go back to the house. At that point, at 2 AM, they go up to the door. Angel's not home, according to the people in the house, so they just sit there and wait. And the other important point, pointing away from probable cause, is that when at 3 AM, after they've been staking out this house for an hour, Angel voluntarily approaches the car. It's not like she's running from the scene. You know, this is not showing any kind of flight or whatever. She's coming up to the car. But they admit on the record, at this point, she's under arrest. So. Alternatively, you do argue that if, you argue that, well, you suggest that we find that there is no probable cause. That, what's the appropriate remedy at that point? The appropriate remedy would be to suppress the statements, of course, from our standpoint. Recognizing that generally in these sort of cases, oftentimes there's an attenuation hearing. The other remedy would be to send it, remand it for an attenuation hearing. And would the circumstances justify that? Or could they? It could, because her videotaped statements are made some period of time after her illegal arrest. So that would be up for the trial court to do a hearing and determine, you know. Whether there was sufficient, a sufficient break in the chain so that this would have been, that probable cause could have been established based on her later statements. Perhaps. We do have the flagrancy of the police conduct. I mean, they really are just doing a fishing expedition here. Well, now, what case would you cite to suggest to us that the conduct was flagrant here? I don't know that I can cite a case off the top of my head right here for the flagrancy. But I know that this is when they talk about attenuation, this is something that's pointed to. The, you know, breaking the chain. You know, proximity in time. The, you know, is there a confrontation, other Miranda warnings, which aren't enough. It did, in this case, I think there's a statement by the detective that once she got in the car, he didn't think that she was, you know, when they took her to the station, he didn't think she was free to leave. Right, it was. But is there any suggestion prior to that that the police were, anything that would suggest that they went there specifically to arrest her? Or could it be described as more of a fluid situation? I mean, I'm not sure that there's a suggestion here that the police went specifically to arrest her. Because like you just said, when they went there the first time, they didn't, they didn't wait and see if she got in the car. Do you know what I'm saying? So it is a curious situation. I mean, I know Detective Heffernan is one of the people that was in the car. She specifically says, yes, she's under arrest. She was not free to go. And I believe there's the other detective, but I can't cite to that point in the record, that also agreed that that was the case. But when they take her to the station, they immediately Mirandize her and start confronting her with Caroline's statement. So it's an immediate arrest situation. She's a suspect. And I'm not suggesting that she wasn't in custody at the time. Because, you know, like I said, I think that an officer had already said that when they brought her to the station, she was in custody. But anyway, that is an issue. That would be an issue for another day if we were to conclude that, you know, that there was no probable cause. And that this still should be remanded for an attenuation hearing, as opposed to, you know, suppressing the statements. Here, at this juncture. Your main point is that she's an unreliable informant, is that correct? That is the first point, is that unreliable. If we skip over the reliability aspect of it, do you accept or reject that assuming her reliability, the content of her information, and the other facts that were known to the police would have been sufficient for probable cause? No, because it's still just based on her own suspicion. She doesn't say that she was present when Aisha was killed. She doesn't say that Angel admitted it. Well, it's not a suspicion that she said, that all these people said that they saw her get into this car. And it's not a suspicion that she was the last person to see her alive. I mean, those aren't suspicions. Those are what she says. And that's what the gold miner says. I mean, those aren't suspicions. Those are facts that she's saying. What I'm asking is, if we assume the reliability, are the facts that are relied upon by the state sufficient to establish probable cause? I would say no, because they're not corroborating Caroline's information, one. And two, compared to these other cases, there's a long time frame between when Caroline says she left Angel with Anthony and HFs. And there's no criminal background for Angel. There's just nothing more than Caroline saying, she's the last person I saw her with. And by the way, I heard that Anthony has committed a crime. But there was some kind of bickering or argument going on between the victim and the defendant, what do they call it, picking at each other? Yeah, they said, picking dicks. And it was so intense that it made the witness uncomfortable. She had to leave. Right. That's what she says. Of course, there's other people at this party, supposedly, that are present, including somebody named Uncle Boo, and Uncle Boo's girlfriend. And I forget somebody else. But they don't talk to these people, so we'd have no corroboration if this was true, they were giving dicks. And there's also this fact that supposedly it's Caroline that's the good friend of Aisha, and she leaves her friend in a car with these people? I mean, this is just, it's a- So there was some suggestion that she did go and leave, because the two of them were bickering or whatever. I forget what the wording was. She said giving little dicks, but she's not specific for why this is making her, that she has to leave at this time. We do know that repeatedly, even though this is supposedly her friend, Aisha Epps, she's lied and said, no, I never left Antonia Frazier's house all night. I was there, and then it turns out she's completely lying about this. And she's the person with the connection to Aisha Epps. The two major prongs of probable cause are that a crime was committed and that the defendant- More likely than not did it. More likely than not did it. Yes, and I would say this absolutely fails to fall short of that. All right. We have the prong that a crime had occurred. Yes. But your position is that we just don't have sufficient probable cause on the second prong that there was, it was more likely than not that the defendant committed that crime. Caroline Peoples has a suspicion. That's all the police have is a suspicion. So this is why we're asking you to reverse the trial court's order and order it for further proceedings, if not suppressing the statements outright. All right. Anything further you want to add at this point? I believe that's- You will have time for rebuttal. Okay. Thank you very much. All right. Toffanetti? Good morning, Your Honor. My name is Bill Toffanetti. I don't know if the court was informed beforehand, but I've been having difficulty hearing. We were informed. So if I ask you to repeat, please, it's because I am having some trouble. All right. The issue of probable cause, we know it consists of two parts. Reason to believe a crime is committed and a reason to believe that a specific individual committed it. Let's talk about that second one. I'm sorry? We're done with the first one, aren't we? We know a crime was committed. Yes, we do. And in fact, the law says that when we know a crime has been committed, specifically if it is a recent serious crime, the factual basis that the police need to establish the second prong goes down. So there's a flexibility built into it based upon the urgency and the reasonness of the offense. Here we have a crime that was committed within a few hours of having been discovered and within 24 hours of the ultimate meeting up with the defendant. So we have a recent offense. It is a serious offense. It is a murder. So we have the police acting in an urgent situation need less factual basis than they might otherwise with a cold case. All right, well, let me ask you this. If the police had solely this information that she was with this other person, you know, four hours before, would that amount to probable cause? That and nothing else? Yes. That would be a much tougher argument for me to make. OK, tougher argument, but what? Are you going to answer that one? But I'd be up here making it, no question about it. OK, you'd be up here making it, all right, OK. It might be. But happily, I don't have to make that argument. No, no, that's true. You're going to tell us all the other things that make it probable cause that we're more likely than not that this person committed that offense. OK, point number two. Illinois courts have noted that information that the defendant has committed similar offenses is another factor to consider. In the case at Barr, we have two things that Caroline Peoples told the police. One is that defendant pointed out the apartment where the murder, she said her boyfriend committed a murder on Phillips Avenue. And she said it was a Mexican. She said she knew the Mexican from where she worked. The police verified the existence of this murder, and it had occurred only a few weeks before, the very last week of May. And now we're on the last day of June. So from that, you can infer that not only did she have knowledge of the murder, but she didn't do anything about it. She didn't do what an innocent person would be thought of to do, in other words, report it. Furthermore, it is also reasonable to infer that she was the connection between the victim and the boyfriend, because it was Angel Ford Wright who knew the victim. So it is an inference, a reasonable inference. And it may not be the only inference, but we don't need to exclude all of the others. It's a reasonable inference that what? That she was involved in that murder. Certainly should be, the murder of Marquez, the Mexican on Phillips Avenue. All right. It is reasonable to infer that she knew about it, that she was somehow complicit in it. Maybe she didn't commit it, but she was. Because her boyfriend had committed it? She said her boyfriend did it. Right. So you're saying it's reasonable to infer that because she said her boyfriend did it, then she did it? No, I didn't say that. All right, what are you saying? I'm sorry, I'm not sure I understood. You correct me. It's reasonable to infer that she was involved, because she did say that she knew the Mexican victim from where she worked. He was a patient at the clinic where she worked. OK, so how did the boyfriend and the victim get together? Oh, I don't know, but I don't know if I go with the reasonable inference that it is she. It is an inference. I'm not sure I agree with you on that one, but go ahead. It is an inference that she is the connection. OK. OK. Was that something that was known to the police prior to the arrest of? I'm sorry? Was that something, when they verified the Marquez murder, did they also learn at that time the connection between Angel Ford Wright and Mr. Marquez? Or was that later? Yeah, because, well, they learned that from Caroline Peeples. I understand that, but other than? Did they confirm it from the file? Caroline Peeples' veracity has been placed into question by the defense. So my question is, when they verified the Marquez murder existed, did they also come to learn of the connection between Angel Ford Wright and Marquez? Or was that something they learned later? There is no information in the record that, yes or no. I would say probably at this point, not. But it's really a silent record on that. So you can't verify that they knew whether this murder had a bit, that he worked where she worked? Probably not. There's no evidence in the record that would allow that inference. All right. OK. Then we have Angel Ford Wright driving around in a white SUV, and she told her cousin that she jacked it, that it's the proceeds of a crime, a carjacking. Now, here she admits the fact of the crime, and here she admits her complicity. So if you take that as true, that would be a second violent offense that defendant could be seen to be not just complicit in, in this case, but to have actually committed. Now, is this enough to arrest her? Is this enough to bring her to trial? No. It doesn't have to be. But it is enough for me. I think you just said something you didn't want to say. You said, is this enough to, what, arrest her? For that specific crime. For that specific crime. All right. OK. But is it enough to make her, to make the police believe that she could be guilty of the primary offense, the murder of Ayesha Epps? All we need is reason to believe. We don't need proof beyond a reasonable doubt. What we need is just a reasonable belief. And in light of the situation that we're dealing with, an urgent situation, I think it would be irresponsible for the police to allow this woman to remain at large. Now, when they went to meet her, and she did voluntarily come to the car, she came to the station, that indicates nothing. I mean, defense witnesses, excuse me, defendants quite often will cooperate with the police in an effort to avoid suspicion, or to make it look like that they are going the extra mile to help the police. So in this instance, you have the defendant voluntarily going to the station, but there is no indication that she was ordered to. There's no indication she was searched. There's no indication she was handcuffed. She was not booked. I mean, this is the least intrusive arrest on record. And in fact, although the evidence doesn't go far enough to make a judgment, I think a reasonable question could be raised as to whether she was really under arrest at all. The fact that the officer said she was in custody is not legally binding. It is not determinative. It is merely one fact to consider. Finally, we have the fact that defendants... Would that be something that would occur if we were to say that, you know, I mean, I'm not sure that that would be something that we would be talking about now, in terms of whether an arrest occurred. It was not raised. It was not raised below. No, no. Nor was it raised in your briefs. No, it was not briefed. So why are we talking about it? I just thought I'd throw it in there because I thought it was a reasonable thing to do in light of the fact that the police were in the process of investigating a crime and they were acting in a reasonable fashion. Well, you know, we've seen many circumstances where we've had that situation where the police have said, well, you know, we've got some questions for you, would you come down to the station, and the police and the state have taken the position that that was voluntary on the part of the person who later turned into the defendant. And I actually, and I can tell from the questioning, we all kind of were wondering how it was that all of a sudden this turned into an arrest. But, you know, I think the fact that this wasn't raised below or raised in the briefs, I think that position may be waived. Your Honor... Let me ask you this. I don't mean to stop you. Let me ask you this. You set forth the factual basis for why you believe that the probable cause exists. But we need you to address the main contention of the appellant, and that is that the person supplying these facts is an unreliable person. And, you know, there's a continuum, starting with confidential, I'm sorry, anonymous informants, all the way up to people who are confessing the crimes. Where does Caroline Peeples fall in terms of how we evaluate, you know, her reliability and whether or not the police can rely on her when they're looking at the facts that she's supplying them? Well, she's not a paid informant. She is not an anonymous tipster, and she's not someone who claims to be psychic. She's in a position to know. She is the defendant's cousin. She admits to having seen a number of things, okay? Whether or not she's reliable, the police don't have to make a determination of reliability of the sort that is subject to judicial review. They have to investigate a crime, and that means chasing down leads. Whether or not the police are going to answer a question, do we have probable cause, is this person reliable? Well, they were able to establish certain corroborating facts. They were able to establish that there was a murder on Phillips. They were able to establish the fact that Ayesha Epps was seen getting into a car that matched the description of Angel Ford Wright's boyfriend's car. And they actually saw the car, so they were able to make that determination themselves. And that is important corroboration, because Angel Ford's boyfriend's car is the defendant's car. It's, I mean, it's a car available to her. This is not like they all got into Caroline Peeble's car. They got into the defendant's boyfriend's car, so that connects the defendant to the event. I think the police have to take her at her word, unless they find specifically that she is lying to them, okay? I think that the police are charged with investigating a murder. They can't simply say, well, this person is a disreputable person, therefore we're not going to believe her. Well, but they did find one point that she was lying to them about, didn't they? She lied to them. Caroline Peeble has lied to the police about her whereabouts initially. She lied to them initially, yes, no question about it. But, again, that's hardly unusual for the police to encounter people who don't want to get involved, especially if they are involved, as we later found out. For the police to have, for the police to have turned her away based upon who she was, it would have been grotesquely irresponsible. They have an obligation to chase down leads. That's what the police do. And their leads took them to Angel Ford Wright. But the issue has been framed here as whether or not there was probable cause to arrest her at the time that they did. And that, you've, what you've argued in your brief is simply that they did have probable cause. You haven't argued anything other than that it did amount to probable cause. They had probable cause. Based upon the fact that she was the last person seen alive with the victim, that she had admitted previous violent conduct, some of which was, that she was associated with, was corroborated, and the fact that we're dealing with an urgent situation that gives the police a more flexible basis for doing things. And what was, what was this, the co-defendant, Kayle, what was her statement about why she was suspicious that Angel Ford Wright and her boyfriend? Because, because Angel Ford Wright had admitted other crimes to her, especially, you know, involving her boyfriend with the Marquez murder, and because she said, she said she saw them drive off with the victim in the defendant's car. So those things put together. Yeah, yes. Those things put together gives the police probable cause. Thank you very much. All right. What? Your Honors, I don't know if there's a lot more to say other than that's not already been said, but again, all these are just suspicions. You know, counsel here is saying that, you know, this car outside that Angel Ford Wright has access to it. We don't know that. There's no proof that she's ever been driving this car. No one has ever said that. In fact, this car that, that Aisha Epps is seen getting into, again, they say that men are in this car. And this is more likely that maybe Anthony is involved, perhaps, and he's the one they should be focusing on. I don't even, the record is really pretty silent on him. But the fact is that Carol, that Angel, again, even if she'd said that her boyfriend had done this crime, it doesn't mean that she never said to Caroline that Angel didn't say that she'd done a crime. You know, whatever this language is about this car, which is also very vague, that they show up in this white SUV, just not corroborated, it's just very nonspecific. We don't know that there's anything to connect Angel and this death of Aisha Epps other than this suspicion based on Caroline, the unreliable witness, saying that the last person, you know, she dropped them off and then, you know, she got dropped off on the street behind where this Mexican man was killed and that's the last she saw of her. It's just suspicion alone is not probable cause and Caroline just had suspicion, that's all the police had. Angel seemed to be voluntarily going up to the car. I don't know why the police didn't decide to do what they said they did with Caroline, which was just ask her if she'd answer some questions, but they don't. They arrest her at that point. She's a suspect and they believe they have probable cause and they don't. Now, was that truly flushed out, that issue about when the arrest occurred? Well, the arrest is when she's not free to go and they say she's under arrest. It's clear in the record she's under arrest. She's immediately taken off to the station and Mirandized and started to be confronted with Caroline's questions immediately. So, from their standpoint, she's under arrest and it seems that there was a lot more suspicion. Was the standard that a reasonable person would feel free to leave under the circumstances and that was the standard? That is the... Was there any... What was done... Well, the police... Well, let me ask you this a better way. Was the record developed as to how she wound up in the squad car on her way to the station? Was she grabbed? Was she handcuffed? Did anybody tell her you're under arrest? What was done so that a reasonable person or her would believe that she was not free to leave? Well, they ask her if she's going to come to the station and she says yes. That's what it actually says in the record, but then the detectives are asked, was she free to leave? And they're like, no, she was under arrest. They're arresting her. So... Well, if the police are going to take somebody into custody, isn't that inconsistent with asking them, are you going to come to the station? What's the difference between you're coming to the station or are you going to come to the station? Why ask them? I don't know, Your Honor. This is in the record. Is this waived? Should we be talking about this? I would say it has been waived by the state. I mean, this is like basically she's under arrest. This is how the whole motion was litigated in the trial court level. That was the moment of arrest and not probable cause at that point. Do you agree, though, with Mr. Taffanetti's earlier comments that when we're looking at whether it's reasonable to believe that she has committed the offense, that the recency and the urgency, the fact that this was a murder, do you agree that that makes it a little less of a burden to show that there was probable cause? I can't think of any, you know, exigent circumstances, you know, person getting away. But again, the police are not really acting as if that's the case when they don't bother to go and arrest her at 1 a.m. or even try to talk to her at that point. So how urgent did the police really think it was? This is what I'm saying is pointing to a fishing expedition is really what's going on here based on Caroline's suspicion that they think all they have is suspicion, and that's what they're operating on. So for these reasons, we ask you to grant Angel Ford Wright relief, as we asked in the briefs. All right, and we thank both of you for your comments today, and the case will be taken under advisement.